**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**vs.**                                             **No. CR 14-3822 RB**

**SAMUEL ELLIOTT,**

      **Defendant.**

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER DENYING DEFENDANT'S MOTION FOR SUPPRESSION OF EVIDENCE**

**THIS MATTER** is before the Court on Defendant's Motion for Suppression of Evidence. (Doc. 20.) The Superseding Indictment charges Defendant with: Counts 1 through 3, production of a visual depiction of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2256; and Counts 4 through 8, possession of material containing images of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), 2256(2)(B), and 2256(8)(A). (Doc. 29.)

Defendant moves to suppress all evidence obtained as a result of the search of his residence on July 24, 2013. (Doc. 20.) As grounds for his motion, Defendant contends that (1) New Mexico State Police officers conducted a warrantless search of his home; and (2) the officers violated Federal Rule of Criminal Procedure 41 because they did not produce the search warrant until the search of the home had been substantially completed. (*Id.*)

The Court held a suppression hearing on September 2, 2015, heard the testimony of witnesses, received documentary evidence, and heard the arguments of counsel. Having carefully considered the submissions and arguments of counsel and the evidence adduced at the suppression hearing, and being otherwise fully advised, the Court **DENIES** Defendant's motion.

## FINDINGS OF FACT

Federal Rule of Criminal Procedure 12(d) provides that when factual issues are involved in deciding a motion, the Court must state its essential findings on the record. *See* Fed. R. Crim. P 12(d). The Court makes the following factual findings based on the evidence adduced at the evidentiary hearing. At the hearing, the Government called two witnesses: New Mexico State Police Officer Carl Christiansen and New Mexico State Police Lieutenant Jesse Williams. Defendant called the following two witnesses: New Mexico State Police Officer Bobbie Terrazas and William Pollock.

1. Officer Christiansen has sixteen years of experience with the New Mexico State Police. (Doc. 49 at 6.) Before his career with the New Mexico State Police, Officer Christiansen was a security police officer with the United States Air Force. (*Id*. at 6.) In July 2013, Officer Christiansen held the rank of Agent and was assigned to the New Mexico State Police Investigations Bureau in Las Cruces, New Mexico. (*Id*. at 8.)

2. Lieutenant Williams has eleven years of experience with the New Mexico State Police and is currently a Lieutenant in the New Mexico State Police in Santa Fe, New Mexico. (Doc. 49 at 41–42.) In July 2013, Lieutenant Williams held the rank of Sergeant and was assigned to the New Mexico State Police Investigations Bureau in Las Cruces. (*Id*.)

3. Officer Terrazas is a New Mexico State Police Officer. (*Id*. at 101.)

4. Mr. Pollock has been Defendant's stepfather for approximately twenty-four years. (*Id*. at 79–80.) Mr. Pollack is a licensed Emergency Medical Technician and volunteer Fire Chief for the Columbus Fire Department. (*Id*.) In July 2013, Mr. Pollack and his wife, Cynthia Pollack, leased the residence located at 8455 Sunshine Way, Columbus, New Mexico. (*Id*.) Mr. and Mrs. Pollack lived at this property with Defendant, Defendant's wife Tammy Seward, three of Defendant's young children D.E., S.E., and Z.E., and Mrs. Pollack's adult nephew, Jeffrey Biddle.

5. On July 23, 2013, at approximately 5:00 p.m., the Sixth Judicial District Attorney's Office in Deming, New Mexico referred allegations of child sexual abuse and exploitation to the New Mexico State Police Investigations Bureau in Las Cruces. (Doc. 49 at 45–46.) The referral included a criminal history intake report, an initial officer's report, and a video copy of a forensic interview conducted with the victim. (*Id*. at 9–10, 47.) Upon receiving the referral, Lieutenant Williams assigned the case to Officer Christiansen. (*Id*. at 46.)

6. Officer Christiansen reviewed the materials and discovered that Defendant's eleven-year-old daughter, M.E., had revealed to her mother, Stephanie Gilham, that Defendant had inappropriately touched M.E while M.E. was visiting Defendant at his home in Columbus. (Doc. 49 at 10.) Ms. Gilham contacted the New Mexico State Police in Edgewood, New Mexico, where she and M.E. had moved. (Doc. 49 at 10.) During a safe house interview, M.E. stated that Defendant touched her while she was sleeping. (*Id*. at 11, 13.) Specifically, M.E. stated that she woke up in Defendant's bedroom and observed Defendant's hand pulling away from her vagina. (*Id*.) M.E. stated that Defendant told her that she was not a virgin anymore. (*Id*. at 14.) M.E. reported that she saw a photo of her buttocks on Defendant's iPhone and the iPhone had a cracked screen. (*Id*.) M.E. stated that Defendant lived with his mother and

3

stepfather, William and Cynthia Pollock, as well as Defendant's wife Tammy Seward, Jeffrey Biddle, and Defendant's three young children, D.E., S.E., and Z.E.  (*Id*. at 12–15.)

7. After reviewing the materials, Officer Christiansen informed Lieutenant Williams that he believed there was sufficient information to obtain a search warrant for Defendant's home.  (Doc. 49 at 15.)  In that three children lived with Defendant, Officer Christiansen and Lieutenant Williams worked until 10:00 p.m. to draft a search warrant for Defendant's residence.  (*Id*. at 14–15, 47–48.)  Although Officer Christiansen completed most of the search warrant that evening, he did not have the precise location or a description of Defendant's residence for inclusion in the warrant.  (*Id*. at 16–17, 48.)

8. In order to ascertain the location of Defendant's residence, Officer Christiansen contacted Officer Terrazas, who works in the Columbus area.  (Doc. 49 at 17.)  Officer Terrazas thought that Defendant lived in the City of the Sun, a quasi-commune near Columbus.  (*Id.*)  At approximately 4:30 a.m. on July 24, 2013, Officer Christiansen and New Mexico State Police Agent Moises Mascorro commenced the two-hour drive from Las Cruces to Columbus.  (*Id.*)  Officer Christiansen timed the trip to arrive before sunrise, so that their presence in the area would not be noticed.  (*Id*. at 18.)  Officer Christiansen and Agent Mascorro were unable to locate Defendant's residence.  (*Id.*)

9. Shortly thereafter, Officer Christiansen and Agent Mascorro drove to the Sixth Judicial District Attorney's Office in Deming.  (Doc. 49.)  With the assistance of the District Attorney's Office Investigator and a subpoena duces tecum served on William Pollock's utility company, Officer Christiansen was able to identify the location and address of Defendant's residence as 8455 Sunshine Way in Columbus.  (*Id.*)

10. At the Deming District Attorney's Office, Officer Christiansen and Agent Mascorro met with Lieutenant Williams, Officer Terrazas and New Mexico State Police Agents Felipe Gonzalez and Don Herrera to plan for the execution of the search warrant at 8455 Sunshine Way. (Doc. 49.) During the meeting, it was agreed that Officer Christiansen would stay at the District Attorney's Office while Lieutenant Williams, Agent Gonzalez, Agent Herrera, Agent Mascorro, and Officer Terrazas drove to Columbus to obtain a description and photographs of Defendant's residence and send them to Officer Christiansen. (*Id.*) After he received the information, Officer Christiansen planned to incorporate it in the search warrant and present the completed affidavit and search warrant to a state district judge in Deming for approval. (*Id.*) As soon as the search warrant was signed, Officer Christiansen planned to call Lieutenant Williams and inform him that the search warrant had been issued and that the search could begin. (*Id*. at 38.) While they waited for Officer Christiansen to finalize the search warrant, the agents at 8455 Sunshine Way planned to arrest Defendant on an unrelated outstanding warrant. (*Id.* at 49–50.)

11. After the meeting, Lieutenant Williams, Officer Terrazas, Agent Gonzalez, Agent Herrera, and Agent Mascorro drove to Columbus and arrived at Defendant's residence at 1:06 p.m. (Doc. 49 at 108.) Upon arrival, Agent Mascorro called Officer Christiansen with the description and emailed photos of the residence to Officer Christiansen. (*Id*. at 20–22, 51–52; Govt. Ex. 1.) After he received the description and photographs provided by Agent Mascorro, Officer Christiansen completed the search warrant and affidavit for 8455 Sunshine Way. (*Id.* at 20–22.) Subsequently, Officer Christiansen met with Assistant District Attorney Janice Schryer to review the warrant. (*Id.* at 22.)

12.     After Assistant District Attorney Schryer reviewed the search warrant and affidavit, she and Officer Christiansen walked from the District Attorney's Office to the district courthouse in Deming.  (*Id.* at 21–22.)  At the courthouse, they met with New Mexico Sixth Judicial District Court Judge Jennifer Ellen DeLaney.  (*Id.*)  Judge DeLaney reviewed the search warrant and affidavit in support and issued the search warrant at 1:50 p.m. on July 24, 2013.  (*Id.* at 22–23, Govt. Ex. 22.)

13.     After Judge DeLaney signed the search warrant, Officer Christiansen called Lieutenant Williams and informed him that the search warrant had been issued and that the agents could begin the search of 8455 Sunshine Way.  (Tr. at 24, 57.)  Officer Christiansen walked back to the District Attorney's Office, collected his belongings, and drove from the District Attorney's Office to 8455 Sunshine Way.  (*Id*. at 24–25.)  The distance between Deming and Columbus is approximately 30 to 35 miles.  (*Id*. at 19.)  After the search warrant was signed, Officer Christiansen drove to Columbus in order to assist with the execution of the warrant.  (*Id*. at 38–39.)  It took Officer Christiansen approximately 30 to 35 minutes to drive from the District Attorney's Office in Deming to Defendant's residence in Columbus.  (*Id*. at 38.)  Officer Christiansen arrived at Defendant's residence at approximately 2:30 p.m.  (*Id.*)

14.     At approximately 1:10 p.m., immediately after Agent Mascorro emailed Officer Christiansen the photos of 8455 Sunshine Way, Lieutenant Williams approached the residence and knocked on the front door.  (Tr. at 51–52.)  Defendant's mother, Cynthia Pollock, and Defendant's wife, Tammy Seward, answered the door.  (*Id*. at 52–53.)  Lieutenant Williams asked Ms. Pollack and Ms. Seward if Defendant was home.  (*Id.*)  A few seconds later Defendant came to the front door and stepped onto the front porch.  (*Id*. at 52.)  The officers informed Defendant of the outstanding arrest warrant, handcuffed him, and placed him in Officer

Terrazas' police vehicle.  (*Id*. at 52–53.)  At 1:22 p.m., Officer Terrazas read Defendant his *Miranda* rights and formally arrested him while he was seated in her patrol car.  (*Id*. at 108–109.)

15. After Defendant was removed from the residence, Lieutenant Williams told Ms. Seward and Ms. Pollock that the agents intended to search the residence but they were waiting for a search warrant to be issued.  (Doc. 49 at 53–54.)  Ms. Pollock asked to see the search warrant and Lieutenant Williams informed her that she could review the search warrant when it arrived at the residence.  (*Id*. at 55.)  After this exchange, Ms. Pollock stated that she was going to call her husband, William Pollock.  (*Id*. at 68.)

16. Also present at the residence were Defendant's three young children, D.E., S.E., and Z.E., and Ms. Pollock's adult nephew, Jeffery Biddle.  (Tr. at 52–53, 54–55.)  Lieutenant Williams asked Ms. Pollock, Ms. Seward, Jeffery Biddle, and the children to stay in the living room, which was visible from the front door of the residence, while the officers waited for the search warrant to be issued.  (*Id*. at 54, 56.)  Lieutenant Williams, Agent Gonzalez, Agent Mascorro, and Agent Herrera took turns standing on the front porch and watched the residents in the living room to make sure they did not destroy evidence.  (*Id*. at 56–57.)  At approximately 1:20 p.m., Mr. Pollock arrived outside the residence.  (*Id*. at 68–69; 102–103; 105–106.)  Approximately five minutes later, Officer Terrazas left with Defendant in her patrol car.  (*Id*.)

17. At approximately 1:50 p.m., Lieutenant Williams received the call from Officer Christiansen that the search warrant had been signed.  (Tr. at 24; 57.)  After receiving this phone call, Lieutenant Williams, Agent Gonzalez, Agent Mascorro, and Agent Herrera began to search Defendant's residence.  (Doc. 58.)  Lieutenant Williams supervised the search and took photographs documenting the items seized.  (*Id*.)  Agent Herrera acted as a scribe, writing down notes of the items seized and the locations from which those items were taken.  (*Id.*)  New

Mexico State Police agents did not begin searching the house until they received word from Officer Christiansen that the search warrant had been issued. (Tr. 58; 66.)

18. At approximately 2:30 p.m., when Officer Christiansen arrived at 8455 Sunshine Way, the search was in progress and Mr. Pollock was standing on the front porch of the residence. (Tr. at 25–26; 38.) Officer Christiansen recognized Mr. Pollock as a former auxiliary sheriff's deputy and met with him on the front porch of 8455 Sunshine Way. (*Id*. at 26.) Officer Christiansen explained the search warrant to Mr. Pollock and provided Mr. Pollock with a copy of the search warrant and affidavit. (*Id*. at 26, 38–39.)

19. During the search, agents recovered numerous items from Defendant's bedroom, including an iPhone with a cracked screen, an HP desktop computer, a Western Digital hard drive, and a video camera. (Tr. at 60–62.) From a room that had been added on to the original residence, agents recovered an eMachine desktop computer. (*Id*. at 62.) At no point prior to the initiation of the search was Defendant's iPhone removed from where it was found in Defendant's bedroom. (*Id*. at 60; 70–71; 75.) The agents did not conduct an analysis of the electronic devices during the search. (*Id*. at 75.) Rather, the agents seized the electronic devices and transported them to the New Mexico State Police vault in Las Cruces. (*Id*.) Subsequently, the electronic devices were analyzed at the New Mexico State Police Regional Computer Forensics Lab in Albuquerque, New Mexico. (*Id*. at 75–76.)

20. The search of 8455 Sunshine Way was completed at approximately 5:00 p.m. on July 24, 2013. (Tr. at 29.) When the search was completed Officer Christiansen drove to a nearby Border Patrol checkpoint and made a photocopy of the inventory of items seized from 8455 Sunshine Way. (*Id*. at 30–31.) Officer Christiansen returned to 8455 Sunshine Way and left the photocopy of the inventory with Mr. Pollock. (*Id*.) Before leaving 8455 Sunshine Way,

New Mexico State Police agents provided Mr. Pollock with a copy of the signed search warrant and affidavit as well as an inventory of the items seized. (*Id.* at 29–30; 38–39; 64.) At the hearing, Mr. Pollock testified that Officer Christensen provided him with a copy of the search warrant and affidavit before the conclusion of the search. (*Id.* at 85; 88; 98.)

21. The testimony of Officer Christiansen, Lieutenant Williams, and Officer Terrazas regarding the above events was fully credible.

22. The testimony of Mr. Pollack was not credible given the inconsistencies in his testimony and the Court's direct observation of his testimony. Specifically, Mr. Pollack testified that his wife called him at "1234 hours" to tell him that the police were at 8455 Sunshine Way. (Doc. 81.) This testimony is contradicted by the New Mexico State Police incident recall report which shows that the officers arrived on the scene at 1:06 p.m. (Tr. at 108; Govt. Ex. 24.) Mr. Pollack's testimony that he received the call at "1234 hours" is also inconsistent with his inability to remember the date of the search or the time he left work on another occasion when Border Patrol agents searched his residence. (Tr. at 92; 90–94.)

23. Mr. Pollack's testimony that Officer Christiansen was present at 8455 Sunshine Way at 1:05 p.m. and gave Mr. Pollack a copy of the affidavit at 1:10 p.m. is inconsistent with the search warrant, which was signed at 1:50 p.m. by Judge DeLaney, ADA Schryer, and Officer Christiansen. (Govt. Ex. 22.) Mr. Pollack's testimony that Officer Christiansen left 8455 Sunshine Way at approximately 1:10 p.m. for 30 to 45 minutes and returned with the signed search warrant is not only inconsistent with the testimony of the law enforcement officers, but physically impossible given that the round trip driving time between Columbus and Deming is at least one hour. (Tr. at 88.) The Court observed that Mr. Pollack was evasive and his testimony was internally inconsistent. (Tr. at 86–89.) Due to Mr. Pollack's close family relationship with

Defendant and the serious nature of the charges, Mr. Pollack has reason to be biased in Defendant's favor.

25.     The fully credible testimony of the law enforcement officers establishes that the search commenced after the search warrant was issued at 1:50 p.m. on July 24, 2013. No credible evidence suggests that the officers began searching Defendant's home before the search warrant was issued.

## CONCLUSIONS OF LAW

1.     The Fourth Amendment to the United States Constitution provides the right to be free from "unreasonable searches and seizures." U.S. Const. amend IV. Generally, the Fourth Amendment requires that police procure a warrant before searching or seizing property. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). However, evidentiary searches and seizures conducted pursuant to a valid search warrant are presumed reasonable in most cases. *See Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). Moreover, as a general rule, affidavits supporting search warrants are presumed to be valid. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978). In this case, Defendant challenges neither the validity of the search warrant nor the accuracy of the affidavits. Rather, Defendant contends that New Mexico State Police officers conducted a warrantless search of his home and violated Federal Rule of Criminal Procedure 41 because they did not produce the search warrant until the search of the home had been substantially completed.

2.     The Supreme Court has held "that neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search." *Groh v. Ramirez*, 540 U.S. 551, 562 (2004). It bears underscoring that the Court has explicitly rejected the notion that a law enforcement officer is

required to present the property owner with a copy of the warrant prior to a search. *United States v. Grubbs*, 547 U.S. 90, 98 (2006). Indeed, courts have recognized that "law enforcement officials are not constitutionally required to present a copy of the search warrant prior to commencing a search, so long as the previously issued warrant is presented before the officers vacate the premises." *United States v. Hepperle*, 810 F.2d 836, 839 (8th Cir. 1987). As neither the Fourth Amendment nor Rule 41 Federal Rules of Criminal Procedure requires exhibition of warrant at the outset of the execution of a search warrant, law enforcement officers need not have actual physical possession of a search warrant at the commencement of a search. *See United States v. Bonner*, 808 F.2d 864, 869 (1st Cir. 1986).

      3.      These concepts are summarized in *Grubbs*, wherein the Supreme Court explained that: "The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is . . . evidence that the requirement of particular description does not protect an interest in monitoring searches." *Grubbs*, 547 U.S. at 98. "The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, *ex ante,* the deliberate, impartial judgment of a judicial officer . . . between the citizen and the police and by providing, *ex post,* a right to suppress evidence improperly obtained and a cause of action for damages." *Id*.

      4.      Accordingly, persons targeted by a search warrant have no right rooted in the Fourth Amendment's particularity clause to use a copy of the search warrant in an attempt to monitor or control the search during its execution. *See Grubbs*, 547 U.S. at 98. In this case, the search commenced after the search warrant was signed at 1:50 p.m. on July 24, 2013. The search warrant was brought to the scene while the search was underway. The fact that a physical copy of the search warrant was not on the premises until Officer Christiansen arrived at

approximately 2:30 p.m. on July 24, 2013 does not violate or implicate any protection afforded by the Fourth Amendment.

5. Rule 41(f)(1)(C) of the Federal Rules of Criminal Procedure requires that officers executing a search warrant "give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property." Fed. R. Crim. Pro. 41(f)(1)(C). The Supreme Court has held that "neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search." *Groh v. Ramirez*, 540 U.S. 551, at 562 n.5 (2004); *see also United States v. Cooper*, 421 F. Supp. 804, 805 (W.D. Tenn. 1976) (finding there was no violation of Rule 41 where the officers began searching the home despite the warrant not arriving on scene for an additional hour and a half). In this case, copies of the search warrant and affidavit were presented to Mr. Pollack during the search of the residence. Additionally, the officers left a copy of the inventory with Mr. Pollack at the conclusion of the search. For these reasons, there was no violation of Rule 41 because the officers scrupulously complied with the requirements thereof.

6. Additionally, the Tenth Circuit recognizes that requirements imposed by statute or rule concerning the execution of search warrants, such as exhibiting a copy of the warrant at the premises, are considered ministerial and "are not deemed to flow so directly from the Fourth Amendment's proscription upon unreasonable searches that failure to abide by them compels exclusion of evidence obtained in execution of a search warrant." *United States v. Ritchie*, 35 F.3d 1477, 1483 n. 6 (10th Cir. 1994) (*quoting* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4:12 (4th ed.)). In this case, there was no violation of the

Fourth Amendment or Rule 41 of the Federal Rules of Criminal Procedure. Defendant's arguments to the contrary are unpersuasive.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Suppression of Evidence (Doc. 20) is **DENIED**.

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**